SOMMERYILL®, J.
Petitioner alleges that on or about August 6, 1915, he was working on the steamship Seria, which was then lying in the port of the city of New Orleans, as a longshoreman, in the employ of the stevedores Eugene Peters and Henry Peters, defendants; that he was injured in the manner set forth in his petition; that the defendants, Eugene and Henry Peters, were, at the time, conducting a business classed as “hazardous” under the terms of Act No. 20 of the Legislature of 1914, of the state of Louisiana; that he was accordingly performing services arising out of and incidental to his employment in. the regular course of the business, at the time and place aforesaid; “and that your petitioner is pro-by the provisions of the said act” (No. 1914, p. 44). Further, “your petitioner that he is entitled, under the terms the aforementioned act of the Legislature, a compensation of $10 per week,” etc.; your petitioner filed this complaint unthe terms of the aforesaid act of the Legislature, and shows that he is entitled to the summary proceedings provided therein.” he prays for judgment against defend-for compensation for the personal injuries suffered by him, all under the said No. 20, 1914, p. 44; instead of damages the injuries suffered by him under the as it existed prior to the passage of said No. 20, and as it now exists.
Defendants answered, and there was judgment in favor of plaintiff and against defendants, and defendants have appealed. Plaintiff has answered the appeal and asks for an increase of the damages allowed him in the judgment appealed from.
[1] Defendants, in this court, have filed the following exception:
“Now into court, through their undersigned counsel, come Henry Peters, Eugene Peters, and the .¿Etna Life Insurance Company, and except to the petition of plaintiff filed herein, and the proceedings had herein, and for ground of exception say that neither the said petition, nor the proceedings and record herein, set forth or show any right or cause of action in plaintiff and appellee or any cause of action known to the laws of Louisiana or of the United States, and for further ground of exception, exceptors Say that to award plaintiff compensation under the circumstances set forth in the record in this matter would be to deprive defendants of their property without due process of law in contravention of the Constitution of the United States of America-! Wherefore, exceptors pray that these exceptions be maintained and that this suit be dismissed at costs of plaintiff and appellee.”
The exception of no right or cause of action, just quoted, is based on the conflict which the Supreme Court of the United States has held exists between state compensation statutes and the Constitution of the United States in all cases wherein suit *1015 is brought in compensation by an employé under the circumstances which would give rise to a right of the employs to sue in admiralty. Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, Ann. Cas. 1917E, 900.
If, under the circumstances, plaintiff cannot recover compensation, and is relegated to his right to sue for damages in the admiralty court or the state court, then there is no cause of action for the compensation sued for in this case; and the court cannot grant him the relief he is herein seeking. If no cause of action for compensation ever existed in plaintiff, the exception filed by defendants in this court was properly filed; and it will be considered. C. P. arts. 345, 346, 902; Brown v. Saul, 4 Mart. (N. S.) 434, 16 Am. Dec. 175; Union Bank v. Dunn, 17 La. 234; Montfort v. Schmidt, 36 La. Ann. 750; La Casse v. N. O., T. & M. R. R. Co., 135 La. 129, 64 South. 1012.
In the ease of Brown v. Saul, supra, the court say:
“A total want of legal right in a suitor in relation to the matters in litigation ought to be taken into consideration and acted on by the courts of justice, at any stage of a cause.”
[2] The work in which plaintiff was engaged, as alleged by him, was that of a longshoreman, on the navigable waters of the country, and it was therefore maritime in its nature.
“His employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction. Atlantic Transport Co. of Imbrovek, 234 U. S. 52, 59, 60 [34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157].” Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, Ann. Cas. 1917E, 900, recently decided.
The right of plaintiff, a longshoreman, to sue his employers, stevedores, in admiralty for injuries sustained on a vessel lying at a dock in navigable waters, is fully settled, m the last case on the subject (Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. [N. S.] 1157), it is said in the syllabus:
“Admiralty has jurisdiction of a suit in personam by an employe of a stevedore against the employer to recover for injuries sustained through the negligence of the latter while engaged in loading a vessel lying at a dock in navigable waters.”
And in the body of the opinion it is stated:
“The petitioner contends that a maritime tort is one arising out of an injury to a ship caused by the negligence of a ship or a person or out of an injury to a person by the negligence of a ship; that there must be either an injury to a ship or an injury by the negligence of the ship, including therein the negligence of her owners or mariners; and that, as there was no negligence of the ship in the present case, the tort was not maritime. This view we deem to be altogether too narrow.
“The libelant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. We entertain no doubt that the service in loading and stowing a ship’s cargo is of this character. Upon its proper performance depends in large measure the safe carrying of the cargo and the safety of the ship itself, and it is a service absolutely necessary to enable the ship to discharge its maritime duty. Formerly, the work was done by the ship’s crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class ‘as clearly identified with maritime affairs as are the mariners.’ See The George T. Kemp, 2 Low. 477, 482 [Fed. Cas. No. 5341]; The Circassian, 1 Ben. 209 [Fed. Cas. No. 2722]; The Windermere [D. C.] 2 Fed. 722; The Canada [D. C.] 7 Fed. 119; The Hattie M. Bain [D. C.] 20 Fed. 389; The Gilbert Knapp [D. C.] 37 Fed. 209; The Main, 51 Fed. 954 [2 C. C. A. 569]; Norwegian Steamship Co. v. Washington, 57 Fed. 224 [6 C. C. A. 313]; The Seguranca [D. C.] 58 Fed. 908; The Allerton [D. C.] 93 Fed. 219; Hughes, Adm. 113; Benedict, Adm. (4th Ed.) par. 207. The libelant was injured because the care required by the law was not taken to protect him while he was doing this work. We take it to be clear that the District Court sitting in admiralty was entitled to declare the applicable law in such a case, as it was within the power of Congress to modify that law. Waring v. Clark, supra [5 How. 441, 12 L. Ed. 226]; The Lottawanna, supra [21 Wall. 558, 22 L. Ed. 654], The fact that the ship was not found to be liable for the neglect is not controlling. If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation and commerce on *1017 navigable waters, was quite sufficient. Even in respect to contracts where subject-matter is the exclusive test, it has been said that the true criterion is ‘whether it was a maritime contract, having reference to maritime service or maritime transactions.’ Insurance Co. v. Dunham, 11 Wall. 1, 26 [20 L. Ed. 90]. The Constitution provides that the judicial powers shall •extend ‘to all cases of admiralty and maritime jurisdiction,’ and the act of Congress defines the jurisdiction of the District Court, with respect to civil causes, in terms of like scope. To hold that the case of a tort committed on board a ship in navigable waters, by one who has undertaken a maritime service, against one engaged in the performance of that service, is not embraced within the constitutional grant and the jurisdictional act, would be to establish a limitation wholly without warrant.”
[3] It is quite clear that plaintiff was engaged in a maritime service, and, while thus engaged, he was injured, and that he would have had a. right of action against defendants in the admiralty court, as well as a right ■or cause of action against them for damages in the -state court. The question now to be considered, under the exception filed by defendant, is:
“Do the Constitution and laws of the United States prevent a state court of common law from applying the state statutes in an action in personam arising upon navigable waters within the state, there being no act of Congress applicable to the controversy?”
Section 2 of article 3 of the Constitution reads as follows:
“The judicial power shall extend to all eases in law and equity, arising under this Constitution, the laws of the United .States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state claimings lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.”
Acting under authority of article 1, § 8, which empowers Congress to make all laws necessary and proper for carrying into execution the powers vested in the government ■or in any department or officer thereof, the first Congress, in the original judiciary act (Act Sept. 24, 1789, c. 20, § 9, 1 Stat. 73, 76), conferred upon the federal District Courts “exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors, in all eases, the right of a common-law remedy, w]iere the common law is competent to give it.” The saving clause has been preserved in all subsequent provisions. R. S. § 563 (8); Jud. Code, § 24 (3), 36 Stat. 1087, 1091, c. 231.
The right of a common-law remedy, reserved to suitors in all cases where the common law is competent to give it, in all civil causes of admiralty and maritime jurisdiction, over which the District Courts of the United States have been given exclusive original cognizance, has been recently held by the Supreme Court of the United States, in the case of Southern Pacific Co. v. Jensen, supra, to take from the state the power to interpose compensation statutes where maritime matters are involved. That decision was in a case where plaintiff sued for compensation, instead of damages, under the New York compensation statute, which statute appears to be similar in its effects to that of this state.
The title of the compensation act of this state, No. 20, 1914, p. 44, declares it to be:
“An act prescribing the liability of an employer to make compensation for injuries received by an employe in performing services arising out of and incidental to his employment in the course of his employer’s trade, business or occupation in certain trades, business and occupations, abolishing in certain cases the defenses of assumption of risk, contributory negligence and negligence of a fellow servant in actions for personal injury and death, establishing a schedule of compensation, regulating procedure for the determination of liability and compensation thereunder and providing for methods for payments of compensation thereunder.”
In section 1, subsec. 2 (a), of the act, the “loading or unloading the cargoes of vessels” is declared to be a hazardous trade, business, or occupation; and section 2 provides that, when a workman receives personal *1019 injuries by accident arising out of and in the course of such employment, his employer shall pay compensation in the amount and to the person or persons therein specified. The act provides for an agreement to be entered into, between the employer and the employé to mate the act binding upon them; and that such “an agreement shall be a surrender by the parties thereto of their rights to any other method, form, or amount of compensation or determination thereof than as provided in this act, and shall bind the employé himself, his widow and relations and depend-ants as hereinafter defined, as well as the employer and those conducting his business during bankruptcy and insolvency.” Section 3. In section 4 of the act, in paragraph (a), it is provided that an employé, working under said act, cannot be charged by his employer with having assumed the risks of his employment, that the injury to him was caused by the negligence of a fellow employe, or that the employe himself was negligent. In case of death the employer shall pay, or cause to be paid, the reasonable expenses of the last sickness and burial of his employe, who was injured in the course of his employment, not exceeding $100; and, in case of injury under like circumstances, a graduated scale of compensation is provided for, to be paid the employe, based on the earning capacity of the said employe at the time of the accident; in case of death, the relatives of the employé are to receive compensation. In section 34:
“That the rights and remedies herein granted to an employé on account of a personal injury for which he is entitled to compensation under this act shall be exclusive of all other rights and remedies of such employé, h'is personal representatives, dependants, relations, or other-, wise, on account of such injury.”
It thus appears that this law of compensation gives to the injured employé a new and distinct cause of action from the former cause of action for damages for personal injuries inflicted through the fault of the employer. And, under the very terms of the law, the right or cause of action given by the law “shall be exclusive of all other rights and remedies of such employé, his personal representatives, dependants, relations, or otherwise, on account of such injury.”
Compensation under the act is to be made without regard to fault on the part of the employer, except where it is occasioned by the willful intent of the injured employé to bring about the injury of himself, or results from the intoxication of the employé; or because of the injured employes deliberate failure to use an adequate guard for protection against accident provided for him, or by the employé’s deliberate breach of statutory regulations affecting safety of life or limb.
Compensation is not based on the rule of damages applied in negligence suits; but, in addition to providing for medicines, or other medical attendance or treatment, and funeral expenses, it is based solely on loss of earning power. “Thus the risk of accidental injuries occurring with or without fault on the part of employé or employer is shared by both, and the burden of making compensation is distributed over all the enumerated hazardous employments in proportion to the risks involved.”
The Supreme Court say, in the Jensen Case, supra:
“Considering our former opinions, it must now be accepted as settled doctrine that in consequence of these provisions Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country. Butler v. Steamship Co., 130 U. S. 527 [9 Sup. Ct. 612, 32 L. Ed. 1017]; In re Garnett, 141 U. S. 1, 14 [11 Sup. Ct. 840, 35 L. Ed. 631]. And, further, that in the absence of some controlling statute the general maritime law as accepted by the federal courts constitutes part of our national law applicable to matters within the admiralty and maritime jurisdiction. The Lottawanna, 21 Wall. 558 [22 L. Ed. 654]; Butler v. Boston Steamship Co., 130 U. S. 527, 557 [9 Sup. Ct. 612, 32 L. Ed. 1017]; Workman v. New York, 179 U. S. 552 [21 Sup. Ct. 212, 45 L. Ed. 314].”
*1021 Tlie court proceeds to say that:
If the several states of the Union, by statutes, or by compensation statutes, subject foreign ships coming into their ports to obligations under such statutes, “the necessary consequence will be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish; and freedom of navigation between the states and with foreign countries would be seriously hampered and impeded. A far more serious injury would result to commerce than could have been inflicted by the Washington statute authorizing a materialman’s lien condemned in The Roanoke. The Legislature exceeded its authority in attempting to extend the statute under consideration to conditions like those here disclosed. So applied, it conflicts with the Constitution and to that extent is invalid.
“Exclusive jurisdiction of all civil cases of admiralty and maritime jurisdiction is vested in the federal District Courts, ‘saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it.’ The remedy which the compensation statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court, and is not saved to suitors from the grant of exclusive jurisdiction. The Hine, 4 Wall. 571, 572 [18 L. Ed. 451]; The Belfast, 7 Wall. 624, 644 [19 L. Ed. 244]; Steamboat Co. v. Chace, 16 Wall. 522, 531, 533 [21 L. Ed. 369]; The Glide, 167 U. S. 606, 623 [17 Sup. Ct. 930, 42 L. Ed. 296]. And finally this remedy is not consistent with the policy of Congress to encourage investments in ships manifested in the acts of 1851 and 1884 (R. S. 4283, 4285 [U. S. Comp. St. 1916, §§ 8021, 8023]; Section 18, Act of June 26, 1884, 23 Stat. 57, c. 121 [U. S. Comp. St. 1916, § 8028]), which declare a limitation upon the liability of their owners. Richardson v. Harmon, 222 U. S. 96, 104, 32 Sup. Ct. 27, 56 L. Ed. 110.
“The judgment of the court below must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.”
The suit of plaintiff is a civil action in personam, having a maritime origin, of which the courts of admiralty have exclusive jurisdiction, “saving to suitors, in all cases, the right of a common-law remedy, where the , common law is competent to give it.” But, as it is not a suit for damages, which was known as a common-law right or remedy for injuries received, at the time of the adoption of the Constitution or the original judiciary act, in 1789, the state cannot interpose its power and give to the plaintiff a cause of action, maritime in its nature, which did not exist in his favor at that time.
The exception of no right or cause of action is sustained; the judgment appealed from is annulled, avoided, and reversed; and this suit is dismissed at plaintiff’s costs.
O’NIEDL, J., dissents.