(86 South. 181)

No. 22511.

## STATE v. WINEHILL & ROSENTHAL.

(May 31, 1920.   Rehearing Denied June 30, 1920.)

*(Syllabus by Editorial Staff.)*

1. Constitutional law ⟨⟩46(2) — Exception that statute is unconstitutional may be filed after trial and before rendition of judgment.

Under Code Prac. art. 346, an exception to the effect that the law under which the plaintiff is proceeding is unconstitutional, filed after the case had been tried and submitted on the issues, but before rendition of judgment, was sufficient to present such question to the court, such exception being in its nature an exception of no cause or right of action, which being a peremptory exception founded on law may be pleaded at any time before final judgment has been rendered, even in the appellate court.

2. Appeal and error ⟨⟩840(3)—Plea of unconstitutionality may be considered, though overruled as filed too late.

That lower court refused to pass on merits of plea of unconstitutionality of the statute under which plaintiff was proceeding and overruled plea on ground that it was filed too late did not preclude appellate court from passing on the merits of the plea.

3. Appeal and error ⟨⟩179(1) — Whether plaintiff has cause of action considered without plea.

Under the Louisiana system of having broad appeals upon the law and the facts, the question of whether the plaintiff has a legal cause or right of action is presented in every case, whether pleaded specially or generally.

4. Licenses ⟨⟩7(4) — License tax on retail dealers in pistols held constitutional over objection that graduation is arbitrary.

That Act No. 206 of 1908 imposed license tax of specified amount on retail dealers in pistols having gross sales of more than $2,500 and imposed tax of specified amount on dealers having gross sales of less than $2,500 without declaring for payment of tax when gross sales are exactly $2,500 does not subject tax to objection that it is not graduated under Const. art. 229, or that graduation is arbitrary, or that the statute·is discriminating, or does not afford all persons in the same class or situation the equal protection of the law, under Const. U. S. Amend. 14.

5. Licenses ⟨⟩7(4) — License tax on retail dealers in pistols held properly graduated.

Act No. 206 of 1908, imposing a license tax on retail dealers in pistols, cartridges, etc., and classing dealers for such purpose into three classes, first, those whose sales are $5,000 or more, second, those whose gross sales are between $2,500 and $5,000, and, third, those whose gross sales are less than $2,500, *held* not violative of Const. art. 229, requiring license tax to be graduated, notwithstanding payment of same tax by dealer whose sales aggregate $100 as the dealer whose sales aggregate $2,400; the Constitution not requiring that the minimum tax be infinitely or indefinitely small or that graduation be an exact ratio.

6. Licenses ⟨⟩7(6)—License tax imposed on retail dealers in pistols, cartridges, etc., held not discriminatory; "dangerous weapons."

Act No. 206 of 1908, imposing license tax on retail dealers in pistols, cartridges, etc., *held* not discriminatory because of express exemption of dealers in rifles and rifle cartridges of 22 and 25 caliber, since such caliber rifles are used merely as toys or for practice, and are not dealt with by the law as dangerous weapons.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dangerous Weapon.]

7. Licenses ⟨⟩1—License tax on retail dealers in pistols, etc., held enacted under police power despite title of act.

Act No. 206 of 1908, imposing a license tax on retail dealers in pistols, cartridges, etc., and making a violation thereof a misdemeanor, *held* enacted in the exercise of the police power, notwithstanding the title declares

that it is an act to increase the revenues of the state.

**8. Constitutional law ⊚⇒212—Equal protection clause does not deprive states of power to classify.**

The equal protection clause of Const. U. S. Amend. 14 does not take from the states the power to classify in the adoption of police laws, but admits of the exercise of a wide discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary.

**9. Constitutional law ⊚⇒209 — Classification need not possess mathematical nicety.**

A classification having some reasonable basis does not offend against the equal protection clause of Const. U. S. Amend. 14 merely because it is not made with mathematical nicety or because in practice it results in some inequality.

**10. Constitutional law ⊚⇒48—Facts at enactment presumed to sustain classification if reasonable.**

When the classification in a law enacted under the police power is claimed to violate the equal protection clause of Const. U. S. Amend. 14, if any state of facts can reasonably be conceived that would sustain it, the existence of such facts at the time the law was enacted must be assumed.

**11. Constitutional law ⊚⇒48 — One assailing statute must prove it arbitrary.**

One who assails the classification in statute enacted under police power has burden of showing that classification does not rest upon any reasonable basis, but is essentially arbitrary.

**12. Licenses ⊚⇒32(1)—One failing to pay license tax liable for interest and attorney's fee.**

Under Act No. 171 of 1898, §§ 26, 28, retail dealer in pistols, who fails to pay license tax imposed by Act No. 206 of 1908, must pay interest at 2 per cent. per month from the date of delinquency and the fee of tax collector's attorney.

**13. Licenses ⊚⇒16(12)—License tax on retail dealers in pistols applicable to pawnbroker.**

Act No. 206 of 1908, imposing license tax on retail dealers in pistols, cartridges, etc., *held* applicable to pawnbroker whose annual gross sales did not exceed $100.

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Suit by the State of Louisiana against Winehill & Rosenthal. From a judgment condemning defendants to pay a license tax, they appeal. Affirmed.

J. P. Baldwin and Lemle & Lemle, all of New Orleans, for appellants.

Carl C. Friedrichs, of New Orleans, for the State.

O'NIELL, J. Defendants appeal from a judgment condemning them to pay a license tax of $100 a year for the years 1914, 1915, and 1916 for having engaged in the business of retail dealers in pistols during those years.

The suit was brought by the tax collector under authority of Act No. 206 of 1908, p. 310. In answer to the rule to show cause why they should not pay the license tax, defendants denied that they had been engaged as retail dealers in pistols during the years 1914, 1915, and 1916. They averred that their business was that of pawnbrokers, for which they had paid a license tax amounting to at least $375 per annum, that it was their custom, and the custom of the pawnbroker's business generally, to retain goods pawned for loans until redeemed by the borrowers, and, if not redeemed, to sell the goods in satisfaction of the debts which they had been pledged to secure, and that in every instance in which they had sold a pistol in the years 1914, 1915, and 1916 the pistol had been pledged or pawned by a borrower, had not been redeemed, and had been sold by defendants merely as an incident of their business as pawnbrokers, to satisfy the debt for which the pistol was pledged.

After the case had been tried and submitted on the issues thus presented, but more than a month before judgment was rendered, the defendants filed an exception of no cause or right of action, averring that, for the rea-

sons specified in their plea, Act No. 206 of 1908 was unconstitutional.

The district court rendered judgment overruling the exception of no cause or right of action and condemning defendants to pay the license tax sued for, with interest at 2 per cent. per month on each $100 from March 1, 1914, 1915, and 1916, respectively, and 10 per cent. on the total, for the attorney's fee. The only reason assigned by the judge for overruling the exception of no cause or right of action was that he considered that the plea of unconstitutionality of the statute was a matter of defense to be specially pleaded in the answer, and that it came too late after the case had been submitted for decision.

[1] The reason given by the district judge for overruling the defendants' exception of no cause or right of action was not well founded. Article 346 of the Code of Practice declares that peremptory exceptions founded on law may be pleaded in every stage of the action previous to definitive judgment. It is settled by a long line of decisions of this court that an exception of no cause or right of action, being a peremptory exception founded on law, may be pleaded at any time before final judgment has been rendered, even in the appellate court. It is also well settled that an exception to the effect that the law under which the plaintiff is proceeding is unconstitutional is in its nature an exception of no cause or right of action. See Veasey v. Peters, 142 La. 1012, 77 South. 948, and Black v. New Orleans Railway & Light Co., 145 La. 180, 82 South. 83.

[2, 3] It would be illogical to hold that we cannot pass upon the merits of the plea of unconstitutionality of the statute in question merely because the district judge did not pass upon the merits of the plea, but overruled it because he thought it was filed too late. If we can consider and pass judgment upon such a plea when filed originally in this court, surely we can consider and pass judgment upon such a plea that was filed in the lower court, even though the lower court's reason for overruling the plea was that he thought it was filed too late. Such a situation is presented in every case in which a district judge refers an exception of no cause or right of action to the merits of the case. Under our system of having broad appeals upon the law and the facts, the question whether the plaintiff has a legal cause or right of action is presented in every case, whether pleaded specially or generally. As was said in Veasey v. Peters, supra, quoting Brown v. Saul, 4 Mart. (N. S.) 437, 16 Am. Dec. 175:

"A total want of legal right in a suitor, in relation to the matters in litigation, ought to be taken into consideration and acted on by courts of justice, at any stage of a cause."

Conceding, therefore, as a general rule, that a statute should be deemed valid unless its violation of the Constitution has been specially pleaded, it would be unreasonable to hold that, when such plea is the basis of an exception of no cause or right of action, filed in the district court, it cannot be finally disposed of by an appellate court unless or until its merits have been considered and disposed of by the district judge, although such plea might be first considered and disposed of by an appellate court if it was filed originally in the appellate court. In this case the district judge did dispose of the plea by overruling it; and we are not confined, in our consideration of the plea, to the question whether the district judge's reason for overruling it was a good reason. Having concluded that his reason for overruling the plea was not a good reason, we must determine whether, for any other reason, his decree should be affirmed.

Appellants contend: First, that Act No. 206 of 1908 is discriminating and denies them the equal protection of the law, in vio-

lation of the Fourteenth Amendment of the Constitution of the United States; and, second, that the statute does not grade or graduate the license tax as required by article 229 of the Constitution of this state. The complaints, specifically, are threefold, viz.:

First. Although the statute undertakes to impose the license tax upon all retail pistol dealers whose gross sales annually are less than $2,500, and upon those whose gross sales annually are more than $2,500, the statute does not impose the tax upon those whose gross sales annually are exactly $2,500.

Second. Although the statute purports to impose the license tax for a sale of only one article, it does not provide for any lower grade of license than is required of a dealer whose gross annual sales are less than $2,500, in consequence whereof the defendants here, who sold less than a dozen pistols a year, and whose gross sales annually were less than $100, are called upon to pay the same license tax that would be demanded of a retail dealer whose gross sales amounted to $2,499 a year.

Third. The second section of the statute is discriminating, in that it expressly exempts from the payment of a license tax dealers in rifles or rifle cartridges of 22 and 25 caliber.

There is a hiatus in the statute, in its failure to declare what the license tax shall be when the gross sales are exactly $2,500. The license tax imposed upon retail dealers in pistols, cartridges, and rifles is graded as follows:

"First class: When the gross sales are five thousand dollars or more, the license shall be two hundred dollars.

"Second class: When the gross sales are under five thousand dollars and more than two thousand five hundred dollars, the license shall be one hundred and fifty dollars.

"Third class: When the gross sales are less than two thousand five hundred dollars, the license shall be one hundred dollars."

It is apparent that either the second class should read, "When the gross sales are two thousand five hundred dollars or more, and less than five thousand," etc., or the third class should read, "When the gross sales are two thousand five hundred dollars or less," etc.

[4] It is possible, of course, though not at all probable, by mere chance, that the gross sales of a retail dealer, in pistols, pistol cartridges, rifles, or rifle cartridges, will in one calendar year amount to exactly $2,500. If that should ever occur, we may be called upon to decide whether the dealer should be adjudged exempt from the license tax or should be required to pay the minimum tax exacted when the gross sales are less than $2,500. But there is no occasion for deciding that question in the case before us. There is no showing nor probability that any retail dealer in pistols or pistol cartridges, rifles or rifle cartridges, has ever been or will ever be exempted from the payment of the license tax by reason of the hiatus in the statute. It cannot be said by reason of the hiatus that the license tax is not graduated or that the graduation is arbitrary. Nor can it be said, by reason of the hiatus, that the statute is discriminating, or does not afford all persons in the same class or situation the equal protection of the law. The statute does not deprive any person or class of persons going into the business of retail dealers in pistols, rifles, or cartridges, of an equal chance—however slight that chance may be—of having gross sales amounting to exactly $2,500 in any calendar year.

Appellants' counsel rely upon the ruling of this court in State v. Southern States Alcohol Mfg. Co., 137 La. 72, 68 South. 217; but we do not consider it applicable to the hiatus in the statute in question. In the case cited the statute purporting to impose a graduated license tax upon all persons, firms, or corporations in a certain business undertook to graduate the business in 20

grades or classes, according to the gross annual receipts, but failed to impose the tax upon those whose annual receipts were between $100,000 and $150,000. It is true the statute also failed to impose the license tax upon those whose receipts were exactly $20,000; but there is no reason to infer that the statute would have been declared invalid if that omission had been the only gap in the law.

[5] Referring now to appellants' second complaint, that the statute does not provide for any lower grade of license tax than is required of a dealer whose gross annual sales are less than $2,500, it is sufficient to say that the constitutional requirement that every license tax shall be graduated does not mean that the minimum tax must be infinitely or indefinitely small. Nor does it mean that the graduation shall be an exact or uniform ratio, as on a percentage basis. If article 229 of the Constitution should be so construed as to require that the minimum grade must be infinitely or indefinitely small, the license tax imposed for every business or occupation in this state would be in that respect contrary to article 229 of the Constitution; for in every statute imposing license taxes there is fixed a minimum grade or class in which all persons engaged in the business pay the same license tax. Of course, if the minimum grade in a statute imposing a license tax should be arbitrarily fixed so high that all persons engaged in the business would be taxed alike, the graduation might be adjudged a mere pretense. But it does not appear, and is not contended, that the statute in question is amenable to that criticism.

[6] With regard to appellants' third complaint, that the statute expressly exempts from the imposition of the license tax dealers in rifles and rifle cartridges of 22 and 25 caliber, it is sufficient to say that appellants do not show, and there is no reason to believe, that the exemption is an arbitrary discrimination or is without good cause. The natural inference is that 22 and 25 caliber rifles are the smallest calibers made and are used merely as toys or for practice. Such rifles are not generally carried concealed or with malicious intent or dealt with by the law as dangerous weapons. In that respect there is as much difference between such rifles and pistols as there is between shotguns and pistols. It is not contended, and could not with reason be contended, that the failure to impose the license tax upon retail dealers in shotguns and loaded shells is an arbitrary discrimination against retail dealers in pistols and pistol cartridges.

[7] The statute in question is plainly an exercise of the police power. In fact, it makes the selling of pistols or pistol cartridges, rifles or rifle cartridges, except 22 and 25 caliber, a misdemeanor, the penalty for which is declared to be a fine not less than $50 or imprisonment not more than 60 days, or both fine and imprisonment, at the discretion of the court. It is true the title of the statute declares that it is an act to increase the revenues of the state by levying a license tax on the sale of pistols, rifles, and cartridges, and by providing a penalty for violation of the act. But calling the statute a revenue measure is not a denial of the fact that it deals with a legitimate subject of police regulation. As was said in State v. Schofield, 136 La. 713, 67 South. 561, in deciding whether a license tax was imposed for revenue or in the exercise of the police power:

"The nature of any measure has to be determined from its operation, and not from the name given to it."

In imposing license taxes upon a business that is a proper subject for police regulation, the state has a broader scope of authority than she would have in the imposition of a license tax for revenue only upon a business

that is not a legitimate subject for police regulation.

[8-11] In Lindsley v. Natural Carbonic Gas Co., 220 U. S. 78, 31 Sup. Ct. 340, 55 L. Ed. 377, Ann. Cas. 1912C, 160, the Supreme Court of the United States laid down the following rules, which are applicable to all of appellants' contentions, viz.:

"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: (1) The equal protection clause of the Fourteenth Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. (2) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. (3) When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. (4) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

Our conclusion is that the statute in question is not unconstitutional or invalid for any of the reasons urged by appellants.

[12] It is also contended, in appellants' exception of no cause or right of action, that Act No. 206 of 1908 does not contain authority for condemning the defendants to pay interest at 2 per cent. per month from the date of delinquency of the tax debtor, and that the statute does not contain authority for condemning defendants to pay the fee of the attorney of the tax collector. That is true, but the general license law of this state (Act No. 171 of 1898) does contain such authority. Section 28, p. 420, declares that all unpaid licenses shall bear interest at the rate of 2 per cent. per month from the 1st day of March; and section 26, p. 419, de-

clares that on all licenses and penalties collected through the agency of the attorney appointed to aid the tax collector in the collection of state and parish licenses the delinquent shall pay a commission to him of 10 per cent. upon the aggregate amount of the licenses and penalties so collected.

[13] Assuming the statute to be valid, appellants' main and original defense was based upon the argument that, being licensed pawnbrokers, they could not be regarded as dealers in pistols, even though they received pistols in pawn as security for debts and thereafter sold the pistols that were not redeemed in the same way that they sold other pawned and unredeemed articles. It is admitted by appellants that, whenever there was a surplus remaining from the proceeds of the sale of an unredeemed pistol, over and above the debt for which it had been pawned, they put the surplus to their profit account, as they did the profit on any other goods sold. There is no more reason why a licensed pawnbroker should be permitted to engage as a retail dealer in pistols without paying the license tax required by Act No. 206 of 1908 than there would be to hold that a licensed retail dealer in hardware should be permitted to sell pistols without paying the special license tax required by the statute. Counsel for appellants cite a decision of the Supreme Court of Alabama (Morningstar v. State, 135 Ala. 66, 33 South. 485) which appears to sustain their contention; but the reason for the decision is not persuasive, and we are not willing to adopt it. It appears that the Alabama court did not make any distinction between requiring a special license for the selling of an article that is the subject of police regulation and requiring a special license for selling an article that is not a legitimate subject for police regulation. The court cited, as authority for the ruling, a decision by the Supreme Court of Mississippi, and two decisions by the Su-

preme Court of Tennessee, none of which decisions seems appropriate, viz. Graham v. State, 71 Miss. 208, 13 South. 883, Shelton v. Silverfield & Feldman, 104 Tenn. 67, 56 S. W. 1023, and Etterman v. Shelton, 104 Tenn. 67, 56 S. W. 1023.

In Graham v. State the ruling of the Mississippi court was that a licensed pawnbroker who, as a mere incident to his business, in a solitary instance, sold for reimbursement a pistol taken in pledge, was not a dealer in pistols within the meaning of a paragraph of the Code imposing a privilege tax on such dealers. Graham had been convicted of violating a statute denouncing as a crime "dealing in pistols or dirks, or sword canes, or other deadly weapons, shotguns and rifles excepted," without first paying the privilege tax and procuring the license required by the statute. On appeal the case was submitted on a statement of facts in which it was admitted that appellant had sold only one pistol, which had been pawned for a loan and not redeemed. The doctrine of the decision is in the adage that one swallow does not make a summer. The court cautiously refrained from expressing an opinion as to whether a licensed pawnbroker who habitually and in the course of his business took pistols in pledge and sold unredeemed pistols as he did other unredeemed articles, without having paid the privilege tax and obtained the special license for dealing in pistols, should be deemed guilty of a violation of the statute. Here is the entire opinion, concise and to the point, viz.:

"The remarkably concise and lucid agreed statement of facts in the record before us shows no amenability in the appellant as a violator of article 3399, Code 1892. There is no evidence that he was a dealer in pistols. He was not engaged in buying and selling pistols, so far as the transcript discloses the facts. He was a licensed pawnbroker, and, as an incident, a solitary incident, to that business, he took a pistol in pledge for repayment of a small sum loaned his customer. The loan not having been repaid at its maturity, he sold the pledge; he resorted to his security for payment of his debt, and in this he committed no offense. May one not sell a pistol which, for any reason, he may wish to dispose of without subjecting himself to the penalty denounced against unlicensed dealers in pistols—persons engaged in the business of buying and selling pistols? May not a man lend his neighbor a dollar, and take a pistol in pledge for repayment of his loan? And may he not lawfully dispose of the pledge in order to repay himself, if necessary? A fortiori may not the licensed pawnbroker, in a solitary instance, and as an incident in the management of his business, do the same thing?

"We express no opinion as to the liability of pawnbrokers where the evidence shows an effort to evade the statute on their part; as, for example, where they habitually acquire and keep pistols, and offer the same for sale, just as other dealers in like goods usually do in their business. It will be soon enough to determine this question when we have a case presented which requires its adjudication. We confine ourselves to the case in hand.

"The evidence was insufficient to support the verdict, and the peremptory instruction asked for defendant below should have been given. Reversed and remanded."

In Shelton v. Silverfield & Feldman the ruling of the Supreme Court of Tennessee was that the defendants, who were licensed pawnbrokers, did not, by offering for sale at auction, and by bidding in and reselling, secondhand clothing that had been pawned for loans and not redeemed, render themselves liable for payment of the privilege tax imposed upon dealers in secondhand clothing. It was not contended, nor thought of, as far as the report of the decision discloses, that the license tax or privilege tax imposed upon those who dealt only in secondhand clothing was a police regulation. The only question presented or decided was whether a licensed pawnbroker might sell at auction, and bid in and resell, the various classes of goods that had been pawned to him for loans, without becoming liable for the special license tax imposed upon the dealers in each separate class of goods so bid in and resold.

In Etterman v. Shelton the ruling was that a clothing merchant dealing in both new and secondhand clothing, having paid the license tax or privilege tax imposed upon merchants, could not be required to pay also the license tax or privilege tax imposed upon those who dealt only in secondhand clothing. It was not contended, nor thought of, as far as the report of the decision discloses, that the license tax or privilege tax imposed only upon dealers in secondhand clothing was a police regulation. On the contrary, it appears from the statute that it was not a police regulation; for the business of dealing in secondhand clothing was merely one of the trades or occupations upon which a license tax or privilege tax was imposed, and was enumerated in the same revenue statute that dealt with merchants, pawnbrokers, etc., viz.: Section 3 of the statute (Laws Tenn. 1899, c. 432) fixed the ad valorem tax and privilege tax on merchants; section 2 (a) fixed the privilege tax on dealers in secondhand clothing; section 2 (b) fixed the privilege tax on pawnbrokers, etc. The court, in rendering its opinion, declared that it was not called upon to decide whether Etterman should have been classified as a merchant or as a dealer in secondhand clothing; that the only question was whether, having been classified by the proper authorities as a merchant, Etterman should also be required to pay a double license tax for dealing in secondhand clothing as a part of his mercantile business. And, proceeding to decide that question, the court said:

"This court is content to say that the authorities charged with the duty of collecting the tax for state and county purposes for the county of Davidson saw proper to accept a merchant tax and privilege from the plaintiff in error, and issued to him a license to carry on his business. Now to impose an additional burden upon him, under the claim of additional or different character of business, would, to say the least, be unjust and oppressive. He has paid his merchant's privilege tax under the belief that it was a proper payment, and could not now recover the same in an action against the clerk, because it was not paid under the belief that it was a proper payment. Without specially classifying this plaintiff in error, we think the one tax on his business, under the circumstances named, sufficient, and all that is warranted by the act of the Legislature.

"The judgment of the lower court is reversed. The petition is sustained."

As the decisions upon which the Supreme Court of Alabama rested its ruling in the Morningstar Case, supra, are plainly distinguishable from the case before us, and are in fact not at all applicable to this case, we take it that the ruling in the Morningstar Case, too, is not appropriate to the question before us.

Our conclusion is that the decree of the district court is correct.

The judgment is affirmed.

PROVOSTY, J., dissents.