123 So.2d 780 (1960)
Herbert S. ELLIS
v.
TRAVELERS INSURANCE CO. et al. (Consolidated with Stepter
v.
T. Smith & Son, No. 21453).
No. 21462.
Court of Appeal of Louisiana, Fourth Circuit.
October 24, 1960.
Rehearing Denied November 14, 1960.
Certiorari Granted January 9, 1961.
*781 Zelden & Zelden, Max Zelden, New Orleans, for plaintiff and appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John V. Baus, New Orleans, for defendants and appellants.
Terriberry, Rault, Carroll, Martinez & Yancey, Robert G. Hughes, New Orleans, for Lykes Bros. Steamship Co., Inc., amicus curiae.
REGAN, Judge.
Plaintiff, Herbert S. Ellis, instituted this suit against the defendants, Standard Stevedoring Company, Inc. and its workmen's compensation insurer, The Travelers Insurance Company, endeavoring to recover maximum compensation benefits for injuries sustained during the course of his employment as a longshoreman aboard a vessel docked in the Mississippi River in New Orleans on February 1, 1958.
Defendants answered, admitting the occurrence of the accident but denied that plaintiff was permanently disabled as a result thereof. They more pertinently asserted that plaintiff's exclusive remedy was encompassed specifically by the Longshoremen's and Harbor Workers' Act, thus, in effect, they pleaded an exception to the jurisdiction of the court ratione materiae.
From a judgment awarding plaintiff compensation in the amount of $35 per week for a period not to exceed 400 weeks, the defendants have prosecuted this appeal.
This case was consolidated with a similar suit arising out of a similar accident, i. e., a longshoreman incurred disabling injuries in the course of his work of unloading cargo from the hold of a ship. The suit referred to is entitled Stepter v. T. Smith & Son, Inc., La.App., 123 So.2d 788. In the Stepter case, the Civil District Court maintained an exception to the jurisdiction of the court ratione materiae, and expressed the opinion that compensation claimed by a longshoreman injured aboard a vessel on navigable water fell exclusively within the purview of the Longshoremen's and Harbor Workers' Act.
It is thus apparent that two divisions of the Civil District Court have rendered conflicting decisions; therefore, in order to reach a conclusion in either case, this court must decide the jurisdictional issue in order to resolve the conflict.
The facts in this case, which, as we have said, pose for our consideration the question of jurisdiction, are undisputed and quite brief.
On February 1, 1958, plaintiff Ellis was employed aboard the S. S. Steel Artisan, a vessel engaged in interstate commerce, when he sustained injuries resulting from being struck by a load of cotton. The ship was docked at the Poland Street wharf in the Mississippi River, a navigable body of water.
For over 43 years the judges of this nation have either observed or participated in the unduly prolonged legal conflict in their courts over the constitutionality of state workmen's compensation laws as they may be applied to longshoremen and other harbor workers. The dilemma again created by virtue of the simple facts related hereinabove is the remedy available to the injured longshoreman or harbor worker. Should he seek redress provided by the admiralty law of the United States or by the state workmen's compensation act? Or, more pertinently, *782 may he elect which remedy he will pursue?
A rather sharp line of demarcation between federal and state jurisdiction was initially established by the controversial Jensen case, Southern Pac. Co. v. Jensen.[1] There exists reason for believing that it has been taken upon the judicial anvil and hammered into many unexpected shapes. In any event, it pronounced that a New York state workmen's compensation statute was unconstitutional insofar as it applied to a longshoreman, injured on a gangway connecting the ship and the dock and whose occupation was wholly maritime in nature. The rationale of the judges participating therein was that an injury occurring over a navigable water was a maritime tort and a remedy could be found only under the general maritime law. State legislatures, the Court explained, could not extend workmen's compensation coverage to longshoremen without infringing upon the exclusive original admiralty jurisdiction granted to United States District Courts by virtue of Article III, Section 2 of the Constitution.[2] To permit state compensation acts to apply to "maritime torts", the Court asserted, would play havoc with the necessary uniformity of admiralty law.
Five years after Jensen, the Supreme Court restricted its ruling therein to permit recovery of workmen's compensation under state law to the maritime worker injured over a navigable waterway in instances where the work performed by him was "local in nature" and had no direct relation to navigation and commerce.[3] To permit the state act to encompass cases which were "maritime but local", reasoned the Court, would not seriously impair the need for "uniformity", as elucidated upon earlier in the Jensen case.
Congress, recognizing the plight of the injured longshoreman for whom relief was not provided by the general maritime law and who was excluded from state compensation benefits,[4] twice unsuccessfully endeavored *783 through legislative enactments to overrule Jensen by expanding the "saving clause" to grant the states power to provide for the injured longshoreman through the medium of workmen's compensation. Both acts were considered by the United States Supreme Court to be an unlawful delegation of authority by the Congress of the United States.[5]
In 1927, Congress finally enacted the Longshoremen's and Harbor Workers' Act, a federal workmen's compensation statute encompassing within its scope employees injured over navigable waters in instances only where state compensation acts "may not validly apply".[6] In adopting this act, Congress apparently endorsed the "maritime but local" exception to Jensen, thus permitting the injured workman falling within that category to seek redress through state compensation laws.
In determining the jurisdictional issue during the ensuing fifteen years, the courts uniformly applied the "maritime but local" test[7] to classify as state or federal the relief available to the amphibious worker, injured over navigable water.
However, in 1942 in the Davis case, the United States Supreme Court conceived and spawned the "wilight zone", a doctrine which afforded the injured waterfront worker the opportunity to elect either the federal or state remedy in doubtful cases or in instances where it was difficult to determine in advance whether the "maritime but local" test would apply.[8] The result reached in the Davis case was apparently just, but unfortunately the semantics employed to define and explain the "twilight zone" failed to clearly establish appropriate legal lines of demarcation as to where the zone began and ended. In two subsequent cases,[9] wherein the United States Supreme *784 Court again applied the twilight zone doctrine, the rationale appeared to minimize the effectiveness of the long-standing Jensen rule, for the Court brought within this medium of obscurity the case of a repairman injured by slipping on a gun mount of a completed vessel in floating drydock and a worker hurt aboard a ship undergoing repairs as he carried planks from hold to hold, allowing both to pursue redress in conformity with state compensation laws.
Had the jural rationalization ended here, it would have been at least plausible to pronounce Jensen dead and buried; however, in 1953, the United States Supreme Court[10] apparently reincarnated Jensen and pronounced that the exclusive remedy of a railroad brakeman, injured while releasing a brake on a freight car aboard a car float in navigable water, was the Longshoremen's and Harbor Workers' Act. The issue therein was whether coverage was to be afforded to this railroad employee under the Federal Employers' Liability Act or the Longshoremen's Act, and in classifying him as a longshoreman and relegating him to his remedy under the Longshoremen's Act, the Court had the following comment to make about Jensen:
"* * * This act (Longshoremen's) and the Jones act provided means for indemnification for injuries for all maritime employees who were beyond the constitutional reach of state legislation. A quarter of a century of experience has not caused Congress to change the plan. The `Jensen line of demarcation between state and federal jurisdiction' has been accepted. Davis v. Department of Labor, (citations omitted)." Obviously the Supreme Court here affirmed the principle of Jensen and also approved of the twilight zone doctrine, so that, reasonably applied, it is possible for Jensen and the twilight doctrine to enjoy harmonious, even if precarious, co-existence.
Until 1957, the last word in Louisiana jurisprudence concerning this jurisdictional issue was the Rhinehart case[11] which emanated from this court; briefly, it followed the rationale of Jensen. However, in the *785 case of Richard v. Lake Charles Stevedores, Inc.,[12] the First Circuit Court of Appeal of this state expressed the opinion that a longshoreman injured in the course of unloading materials from the hold of a ship docked on navigable water could elect remedies, i. e., could seek redress in either a federal or state tribunal under the authority of the Davis, Baskin and Moores cases. The defendant therein applied for writs of certiorari, which were ultimately refused by our Supreme Court and the United States Supreme Court.
Since the rendition of this decision, the United States Court of Appeals, Fifth Circuit, has twice applied the rationale of Jensen in determining jurisdiction; in both instances it was of the opinion that the federal court possessed exclusive jurisdiction.[13] The first of which was the Flowers case; it involved a ship repairman injured over navigable water. The second was the Noah case, wherein a longshoreman drowned in the scope of his employment unloading pig iron from a ship docked in navigable water. In the Flowers case, the United States Supreme Court denied certiorari.[14] In the Noah case the court quite emphatically was of the opinion that "The employment of longshoremen to load and unload cargo) is the precise employment described in the Longshoremen's Act and was indeed the very activity which gave rise to Jensen * * *." The court asserted that the Louisiana workmen's compensation law was inapplicable and that the federal Longshoremen's and Harbor Workers' Act provided the exclusive remedy.
The latest definitive expression, enunciated by the United States Supreme Court, on this subject, occurred in Hahn v. Ross Island Sand & Gravel Company.[15] Plaintiff (not a longshoreman) was injured while working on a barge floating in navigable waters within the State of Oregon. He rejected Longshoremen's compensation in order to pursue a remedy for personal injuries in the Oregon state court. The Court asserted that the facts warranted the conclusion that he might elect remedies since his injury was encompassed by the doctrine designated as the twilight zone. However, here again, the Court failed to clearly elucidate upon the reasons which provoked this result so as to at least preserve whatever harmony remained in the jurisprudence.
In any event, the Court rationalized thus:
"In Davis v. Department of Labor * * * we recognized that in some cases it was impossible to predict in advance of trial whether a worker's injury occurred in an operation which, although maritime in nature, was so `local' as to allow state compensation laws validly to apply under the limitations of Southern Pacific Co. v. Jensen * * *. As to cases within this `twilight zone,' Davis, in effect, gave an injured waterfront employee an election to recover compensation under either the Longshoremen's Act or the Workmen's Compensation Law of the State in which the injury occurred. * * *"
*786 More briefly, the Court concluded that the plaintiff therein might elect his remedy since his injury and the nature of his employment was encompassed by the twilight doctrine; however, it approved of and affirmed the Jensen rationale enunciated 42 years earlier.
From the foregoing summarized jurisprudence, counsel for plaintiff draws the conclusion and, therefore, maintains, in effect, that any longshoreman or harbor worker injured during the scope of his employment may elect to endeavor to procure either state or federal compensation, and relies heavily upon the rationale of the Richard decision to support this argument.
Counsel for defendants however insist that the exception to the lower court's jurisdiction was improperly overruled, since the facts herein parallel those of Rhinehart and of Jensen, and that the latter case, despite much illogical vacillation, is still the law applicable to the case; therefore, plaintiff's exclusive remedy for the procurement of compensation must be through the medium of the Longshoremen's and Harbor Workers' Act.
A careful review of the jurisprudence convinces us that the Jensen doctrine has not been overruled, especially in view of the United States Supreme Court's consideration thereof in both the O'Rourke and Hahn cases. Therefore, it appears that only two exceptions to Jensen have actually been spawned by the federal courts, and they are (a) the maritime but local rule and (b) the twilight zone. Has the effect or semantic ramifications of the twilight zone doctrine been to afford the injured waterfront worker an election of remedies in all cases as was suggested by Richard? We think not. The Davis case created this borderline area ostensibly to better serve the ends of justice, but we are of the opinion that only doubtful cases posing facts which cannot be clearly categorized as to state or federal jurisdiction should be encompassed within the twilight zone. Unfortunately, the doctrine's unjustified extension in the Moores and Baskin cases created the confusion, but we think, in the past decade, the United States Supreme Court has endeavored, although somewhat laboriously, to rectify the errors committed therein by re-establishing the philosophy of the Jensen case.[16] In the last analysis, the federal courts have reasoned, and we believe correctly so, to the effect that the facts of each case must be individually considered, in conformity with the true technique employed by the civil law, and only where it is difficult to draw the jurisdictional line may the injured worker elect remedies.
The civil law has always recognized that certain branches of the law call in conspicuous measures for certainty and order for an administration of justice that is strict and in a sense mechanical, such as inheritance or successions, definition of interests in property and the conveyance thereof, matters of commercial law, and transfers of obligations, etc.
Other branches of law are better served where flexible standards, capable of being individualized to meet the needs of varying conditions, supersede the rigid rule with its mechanical application, such as torts and generally those branches of law that deal immediately with conduct.[17]
However, the facts of this case pose no doubt, for plaintiff Ellis' accident is a classic illustration of a case which was designed for the application of the Longshoremen's and Harbor Workers' Act and where the rationale of Jensen should apply without equivocation. He was injured aboard a vessel docked on navigable water and engaged in interstate commerce, while performing duties of a longshoreman, *787 which were wholly maritime in nature, and for the benefit of an employer engaged in fulfilling maritime contracts. We feel the same way about the facts and the law which should have applied in the Richard case. No useful purpose would be served by engaging in a laborious discussion thereof; suffice it to say that in substance the cases are almost identical.
Therefore, we are compelled to conclude that the plaintiff herein must pursue his remedy in conformity with the specific provisions of the Longshoremen's and Harbor Workers' Act, which is exactly what we said approximately seventeen years ago in the Rhinehart case.
In view of the conclusion we have reached hereinabove, it is obvious that we not only have conflicting decisions emanating from the Civil District Court for the Parish of Orleans, but we also have a conflict in the appellate jurisprudence, emanating from the First[18] and Fourth[19] Circuit Courts of Appeal, and after the passage of seventeen years, we are again compelled to conclude that our pronouncement of the law applicable to the Rhinehart case was correct and reaffirm that decision in the matter now before us.
In the final analysis, counsel for plaintiff insists that the Richard decision is binding on this court by virtue of being the latest expression of the law in the Louisiana jurisprudence, especially since our Supreme Court's refusal to entertain writs was tantamount to approval of the result reached therein.
We find no merit in this contention. In the Richard case, the trial court maintained defendant's exception to the jurisdiction ratione materiae. On review, the First Circuit Court of Appeal ruled that the exception was improperly maintained by the trial court and remanded the cause for trial on the merits. The decision of the court of appeal remanding the cause for trial on the merits was not a final judgment;[20] therefore the Supreme Court was "powerless" to grant a writ.[21]
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the defendant, maintaining the exception to the jurisdiction ratione materiae and dismissing plaintiff's suit at his cost.
Reversed
NOTES
[1] 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086.
[2] Art III, Sec. 2 in part provides: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, * * *; to all Cases of admiralty and maritime Jurisdiction; * * *."

Under this authority Congress enacted the Judiciary Act of 1789, paragraph 9 of which gives United States District Courts "exclusive original cognizance of all civil cases of admiralty and maritime jurisdiction * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." 1 Stat. 76, 77.
[3] Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321.
[4] An example is the case of Veasey v. Peters, 142 La. 1012, 77 So. 948, reversed, 251 U.S. 121, 40 S.Ct. 65, 64 L.Ed. 180. Veasey, a longshoreman, sustained injuries when he accidentally fell through a hatchway aboard the steamer "Seria", from which he was unloading cargo. The United States Supreme Court reversed a workmen's compensation award by the Louisiana courts asserting: "The work in which [Veasey] was engaged is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction."

It is interesting to note that the Louisiana Supreme Court first concluded that Veasey's injury was not compensable under the state workmen's compensation act; however, on rehearing it reversed its original decision. In order to do so the Supreme Court of Louisiana was compelled to distinguish the Veasey facts from those in Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 54 L.Ed. 1208, wherein the United States Supreme Court held that the remedy of a stevedore injured while unloading materials into a ship docked on navigable waters could be pursued only under the general maritime law.
The novel distinction the Louisiana court drew to circumvent the Imbrovek holding is as follows [142 La. 1012, 77 So. 952]:
"In the Imbrovek Case, it was held that the occupation of stowing goods in the hold of a ship was maritime in its nature because on the proper performance of that duty depend in a large measure the safe carrying of the cargo and the safety of the ship itself. In the present case the occupation of plaintiff was to unload the ship, and that could have no possible relation to the safety of the ship or its navigation. * * *"
The Court thus concluded that the loading of a vessel was a maritime contract, but the unloading was not, despite the fact that at one time, both loading and unloading of cargo were among the duties performed by a ship's crew and historically considered maritime occupations.
[5] Knickerbocker Ice Company v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 and State of Washington v. W. C. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646.
[6] The pertinent part of the act, 33 U.S.C.A. § 903(a) provides:

"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law." (Emphasis added.) See Senate Report 973, 69th Congress, First Session. See also Gilmore and Black, The Law of Admiralty (1957).
[7] See Sultan Ry. & Timber Co. v. Department of Labor & Industry of State of Washington, 1928, 277 U.S. 135, 48 S.Ct. 505, 72 L.Ed. 820; Alaska Packers Association v. Industrial Accident Commission, 1928, 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656; Alaska Packers Association v. Marshall, 9 Cir., 1938, 95 F.2d 279 and New Amsterdam Casualty Co. v. McManigal, 2 Cir., 1937, 87 F.2d 332.
[8] Davis v. Department of Labor and Industries of Washington, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246. Davis was injured while aboard a barge in the course of his employment, which was dismantling a bridge spanning navigable water. The United States Supreme Court specifically stated that this decision did not reverse Jensen; however, it asserted that the facts therein made it difficult to apply the Jensen rule as interpreted by the jurisprudence. Because the State of Washington had accepted jurisdiction under its own compensation act, the Supreme Court relied upon the presumption that this statute was constitutional and upheld the award of state relief.
[9] Baskin v. Industrial Accident Commission, 89 Cal.App.2d 632, 201 P.2d 549, reversed and remanded, 1949, 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523 and Moores's Case, 323 Mass. 162, 80 N.E.2d 478, affirmed by a per curiam decision of the United States Supreme Court, Bethlehem Steel Co. v. Moores, 1948, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417. Although the Supreme Court brought two repairmen injured aboard a vessel on navigable water, while executing a contract for ship repairs, within the twilight zone, it based its decision in both instances squarely upon the Davis decision, which affirmed the Jensen holding. It is impossible to reconcile the irreconcilable, i. e., the result in these cases as a twilight zone exception to Jensen, and at the same time maintain that Jensen is still the law.
[10] Pennsylvania R. R. Co. v. O'Rourke, 1953, 344 U.S. 334, 73 S.Ct. 302, 304, 97 L.Ed. 367.
[11] Rhinehart v. T. Smith & Sons, Inc., La.App.1943, 14 So.2d 287, 289. Plaintiff was drowned when he fell into the Mississippi River from a barge owned by his employer, T. Smith & Sons, Inc., which he was compelled to traverse in leaving the S. S. Ada O. where he had been engaged in the work of a longshoreman. Judge McCaleb was the organ of this court and he was emphatic in asserting that "* * * the Longshoremen's and Harbor Workers' Act provides an exclusive remedy to all maritime employees, their legal representatives, parents, dependents and next of kin, for compensation resulting from injury or death to the employee occurring upon navigable waters of the United States. See sections 902, 903, 904 and 905, 33 U.S.C.A. Section 5 of the act 33 U.S.C.A. § 905, provides:

"`The liability of an employer prescribed in section 904 of this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, * * *" (Italics ours.)"
[12] A longshoreman, injured in the hold of a vessel moored in navigable waters, sought workmen's compensation under the Louisiana act. The Louisiana district court dismissed his suit on the ground that his exclusive remedy was the federal Longshoremen's and Harbor Workers' Compensation Act. The court of appeal held, reversed and remanded. A longshoreman injured on navigable water can seek workmen's compensation under either the Longshoremen's and Harbor Workers' Compensation Act or the Louisiana Workmen's Compensation Act. Richard v. Lake Charles Stevedores, La.App.1957, 95 So.2d 830, certiorari denied 1958, 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529.
[13] Flowers v. Travelers Insurance Company, 5 Cir., 258 F.2d 220; Noah v. Liberty Mutual Insurance Company, 5 Cir., 1960, 267 F.2d 218, 219.
[14] 1959, 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582.
[15] 1959, 358 U.S. 272, 79 S.Ct. 266, 267, 3 L.Ed.2d 292.
[16] See footnote 9.
[17] See Pohl v. American Bridge Division U.S. Steel Corp., La.App., 109 So.2d 823, footnote 7 at page 827. (certiorari denied)
[18] Richard v. Lake Charles Stevedores, La.App.1957, 95 So.2d 830.
[19] Rhinehart v. T. Smith & Son, La.App.1943, 14 So.2d 287. The Fourth Circuit Court of Appeal was designated as the Orleans Court of Appeal at the time this decision was rendered.
[20] C.P. Art. 539 states:

"Definitive or final judgments are such as decide all the points in controversy, between the parties.
"Definitive judgments are such as have the force of res judicata."
[21] C.P. Art. 565 provides:

"One may appeal from all final judgments rendered in causes in which an appeal is given by law, whether such judgments have been rendered after hearing the parties, or by default."
C.P. Art. 566 provides:
"One may likewise appeal from all interlocutory judgments, when such judgment may cause him an irreparable injury." (Emphasis added)
In Feitel v. Feitel, 1929, 169 La. 384, 125 So. 280, the Supreme Court said it was "powerless" to grant a writ on a judgment overruling exceptions, unless irreparable injury would be worked by such a refusal. The Feitel ruling has recently been cited with approval in Harris v. Primos, La.App., 98 So.2d 863 and Farmers Supply Company v. Williams, La.App., 107 So.2d 544.