230 So.2d 443 (1969)
Allen J. ESTAY
v.
LAFOURCHE PARISH SCHOOL BOARD et al.
No. 7957.
Court of Appeal of Louisiana, First Circuit.
December 30, 1969.
*444 Edward T. Diaz and H. Howell Herrin, Golden Meadow, for appellant.
Bernard Knobloch, Thibodaux, Miller, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiff appeals the judgment of the trial court dismissing his application for a preliminary injunction prohibiting defendant school board from enforcing a regulation barring married high school students from participation in extra-curricular school activities, athletics in particular. The lower court granted plaintiff a suspensive appeal pursuant to LSA-C.C.P. Article 3612. We find no error in the judgment of the trial court and affirm the result reached below.
The issue presented for resolution is a matter of first impression insofar as concerns a regulation of such nature adopted by a governmental agency, namely, a school board. In Marino v. Waters et al., 220 So.2d 802, La.App. First Circuit, March 10, 1969, we had occasion to consider the legal effect of a transfer rule adopted by a voluntary association, namely, the Louisiana High School Athletic Association. While the rule announced in Marino, above, is not decisive of the issue herein presented, we deem it persuasive as will hereinafter appear.
There is virtually no dispute respecting the facts of the present controversy. On May 25, 1960, defendant school board, the governing authority for Lafourche Parish Public Schools, unanimously adopted the following resolution:
LAFOURCHE PARISH SCHOOL BOARD POLICY RELATING TO MARRIED EDUCABLES ENROLLED IN THE PUBLIC SCHOOLS OF LAFOURCHE PARISH
1. Upon marrying, they will be classified as "Special Students."
2. As Special Students, they will enroll in academic subjects only.
3. Physical education course requirements will be waived.
4. Special Students will not participate in any extracurricular activities whatsoever.
5. Each day, upon completion of academic classes, Special Students will be expected to leave the school campus without loitering.
Lafourche Parish School Board, in dictating a policy to be followed relative to the status of married students in the school system of Lafourche Parish, does not, by this action, condone the acceptance of early marriages at high-schoolage level, but on the contrary does go on record directing principals and guidance teachers and other members of faculty to point out to pupils in their charge the *445 desirability of completing the high school education before contemplating marriage.
Plaintiff, a senior for the year 1969-1970 school year at South Lafourche High School (South Lafourche), an institution under the supervision and control of defendant Board, was married August 7, 1969. At the time of his marriage plaintiff was eighteen years of age. For two years preceding his marriage, plaintiff had been a full time student at South Lafourche participating in extra-curricular activities, particularly football. On the date of his marriage plaintiff was a member of the football team, having earned a first team position. Subsequent to plaintiff's marriage, he has been denied the right to participate in school athletics. While plaintiff remained eligible for football at South Lafourche, he competed in said sports against married students from the neighboring Parish of Terrebonne which has no rule against married students participating in extra-curricular school activities. Appellant concedes his marriage was contracted in full awareness of the school board policy which prohibited married students from engaging in extra-curricular school activities.
Plaintiff maintains the regulation in question is null and void in that it contravenes the equal protection clause of the United States Constitution as found in Amend. 14, Section 1, thereof. In addition, appellant contends the ruling violates the same constitutional privilege as guaranteed by Article 1, Section 2, of the Louisiana Constitution of 1921.
More particularly, appellant contends there is no state constitutional or statutory prohibition against married high school students participating in extra-curricular school activities. Neither, according to appellant, is there any express constitutional or legislative authority for defendant School Board's adoption of the policy in question. Consequently, according to appellant, it is incumbent upon defendant to show some legislatively created criteria as authority for the rule, otherwise the rule must fall. Plaintiff also maintains the rule is discriminatory in that it denies him full participation in high school activities available to unmarried pupils. Appellant also relies upon an opinion rendered by the Attorney General, State of Louisiana, under date of September 14, 1967, to the effect defendant school board lacks authority to adopt and enforce the regulation in question.
Defendant maintains it has ample authority for the action in question pursuant to the provisions of LSA-R.S. 17:81 and 17:104; that the rule is reasonable in that it is designed to discourage rather than prohibit early marriages because of the tendency of married pupils to become drop outs rather than complete their high school education and that appellant has not been discriminated against because the rule has been fairly and uniformly applied in every instance.
As contended by defendant, LSA-R.S. 17:81 confers upon it authority to make rules and regulations for its own government, provided they do not conflict with law or the regulations of the Louisiana State Board of Education.
Full and final authority for the operation of public high schools is granted defendant Board by virtue of LSA-R.S. 17:104, the pertinent portions of which read as follows:
"II. Subject to appeal in the limited respect herein provided, each local board shall have full and final authority and responsibility for the assignment, transfer and continuance of all pupils among and within the public schools within its jurisdiction, and shall prescribe rules and regulations pertaining to those functions. Subject to review by the board as provided herein, the board may exercise this responsibility directly or may delegate its authority to the superintendent of education or other person or *446 persons employed by the board. In the assignment, transfer or continuance of pupils among and within the schools, or within the classroom and other facilities thereof, in accordance with such rules and regulations, the following factors and the effect or results thereof shall be considered, with respect to the individual pupil, as well as other relevant matters: * * * the psychological effect upon the pupil of attendance at a particular school; the possibility or threat of friction or disorder among pupils or other; the possibility of breaches of the peace or ill will or economic retaliation within the community; the home environment of the pupil; the maintenance or severance of established social and psychological relationship with other pupils and with teachers; the choice and interests of the pupil; the morals, conduct, health and personal standards of the pupil; * * *."
It is evident that the above statute confers upon defendant authority and responsibility for the assignment, transfer and continuance of pupils within defendant's jurisdiction. Additionally defendant is authorized to prescribe rules and regulations relating to assignment, transfer and continuance of students in its schools. Further, in dealing with matters of assignment, transfer and continuance of pupils "among or within the schools, or within the classroom and other facilities thereof" (emphasis added) defendant Board is committed to consider certain factors. The listed factors which appear particularly apropos here are: (1) the psychological effect upon the pupil of attendance at a particular school; (2) the maintenance or severance of established social and psychological relationships with other pupils and with teachers; (3) the choice and interests of the pupil (emphasis supplied); (4) the morals, conduct, health and personal standards of the pupil, and (5) other relevant matters (emphasis supplied).
We believe the prime obligation of the public school system, as expressed in the cited statute, is to furnish each student and pupil a full and complete high school education, without discrimination or distinction. To this end, it is defendant's clear and unmistakable obligation to conduct the schools under its supervision in the overall best interest of each pupil, each school, and the system as a complete unit. In addition we hold that any rule or regulation reasonably calculated to insure that each student complete his high school education is within the scope of the statute's authority.
Mr. George J. Hebert, Principal, South Lafourche, testified that but for the resolution in question, appellant would be permitted to engage in high school athletics. He freely acknowledged that student marriages do not necessarily increase disciplinary problems. He explained that in applying the rule, married students were limited to participation in academic courses necessary for graduation and were denied the right to engage in extra-curricular activities such as athletics. Mr. Hebert acknowledged that plaintiff's marriage had posed no disciplinary problems. He also averred married students are allowed full academic participation in school affairs but are required to leave the campus when their classes are finished. According to Mr. Hebert, the rule has been consistently applied to all married students, without exception, favoritism or partiality.
Mr. Mark Ralph Pere, Football Coach, South Lafourche, testified in essence that plaintiff was a star on the football team; that plaintiff's marriage did not affect his ability to play football, and that he, Pere, had no objection to married students participating in high school athletics. He also stated that a student's inability to participate in athletics could possibly deny the student a college athletic scholarship *447 without which the student would otherwise be denied a college education.
Superintendent of Lafourche Parish Schools, Woodrow J. Defelice, testified the resolution in question was adopted during his superintendency which antedates 1960. He explained that prior to 1960, some adjoining parishes did not permit married students to attend school at all. Consideration of the matter prompted defendant Board to allow married students to attend school but not participate in extracurricular activities. He explained that the reasoning behind the regulation was not to prohibit early marriages but to discourage youthful entry into matrimony. He also explained that while defendant board considered early marriage was not in the best interest of the parties concerned, nevertheless married pupils should be given opportunity to finish their education so that they might be more productive and stable citizens in adult life. Mr. Defelice also stated experience showed a marked increase in drop outs among married students; this he attributed at least in part to the increased demands on the married student's time for discharge of his marital obligations. Mr. Defelice further stated that to relieve the time conflict between the students' scholastic and married life, it was deemed best to require married students to leave the school premises immediately upon completion of daily classes. In this way, he stated married students who were compelled to work or otherwise engage themselves in support of the marital obligations, would have time to attend to these duties. The unmistakable inference of Mr. Defelice's testimony is that the rule promoted the best interest of married students because it was designed to promote their continued education and enhance the possibility of success of their early marriage.
No citation of authority is needed in support of the proposition that the alleged invalidity of the rules and regulations promulgated by defendant School Board for the operation of schools under its supervision must be interpreted in the light of the equal protection clause, Section 1, 14th Amendment, United States Constitution, and the due process clause of Article 1, Section 2, Louisiana Constitution of 1921.
We do not agree with appellant's contention that, absent express authority on defendant's part to adopt the resolution in question, the burden rests on defendant to establish the legality of the regulation in question.
The pertinent statute confers upon defendant at least clearly implied authority to adopt the policy in question as hereinabove shown. To this extent the state has granted defendant, as its agency, authority to exercise regulatory powers otherwise resting in the state itself.
It is well established that one who disputes the authority of a state in such matters bears the burden of establishing the invalidity urged. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369; City of New Orleans v. LeBlanc, 139 La. 113, 71 So. 248.
The requirements of the equal protection clause, Amendment 14, Section 1, of the United States Constitution and the due process clause of Article 1, Section 2, Louisiana Constitution of 1921, are fulfilled when laws or regulations involved affect alike all persons similarly situated. City of New Orleans v. Schick, 167 La. 674, 120 So. 47.
Laws or regulations resulting in classifications having a sound and reasonable basis do not offend the equal protection clause of the United States Constitution. State v. Winehill & Rosenthal, 147 La. 781, 86 So. 181.
Opinions of the Attorney General have no judicial force or significance. At *448 most, they are persuasive in some instances. State ex rel. Singelmann v. Morrison, La. App., 57 So.2d 238.
Appellant has not cited one authority in which a regulation of the nature herein involved has been successfully attacked. On the contrary, defendant points to several jurisdictions in which similar policies by comparable state agencies have been sustained against the same constitutional attack.
We are of the view that the right to public school attendance is not an unqualified right. Rather it is a right involving concomitant privileges and obligations. Among these is the duty of submitting to reasonable regulations imposed by lawful authority in the interest of the individual student and the welfare of institutions of learning. A student cannot be deemed to possess the constitutional right to breach reasonable, uniformly applied disciplinary regulations of a school authority. Board of Trustees of University of Mississippi v. Waugh, 105 Miss. 623, 62 So. 827, L.R.A.1915D, 588.
In Kissick v. Garland Independent School District, 330 S.W.2d 708 (Texas Civil Court of Appeals), a similar regulation was found valid. The argument was advanced there, as here, that such a regulation violates public policy in that it discriminates against and penalizes married persons by denying them full participation in all public school activities. The argument was dismissed by the Texas court upon finding that the policy involved was not intended to discourage marriage as an institution in all forms and aspects, but rather to discourage underage marriages for valid reasons.
We are in full accord with State ex rel. Thompson v. Marion County Board of Education, 202 Tenn. 29, 302 S.W. 2d 57, which held it is the duty of Boards of Education, rather than the courts, to operate and administer the affairs of public schools. We are likewise of the view the courts must uphold the regulations of school authorities which are neither arbitrary nor unreasonable, even though the courts may disagree with the underlying policy therefor. Any other rule would charge the court with the difficult task of operating the public school system. Admittedly, this court is lacking in the ability, time and inclination to properly perform a function of this nature. We believe any other policy would result in confusion inimical to the welfare and efficiency of our public school system.
In affirming the reasonableness of school regulations designed to discourage early marriages, the Common Pleas Court of Ohio in State of Ohio ex rel. Baker v. Stevenson et al., 189 N.E.2d 181, stated:
"Any policy which is directed toward making juvenile marriages unpopular and to be avoided should have the general public's whole-hearted approval and support. The school authorities, under whose supervision and control come the high school students, cannot be charged with abusing their discretion in promulgating rules which tend to make such marriages unpopular.
* * * * * *
"A board of education must not permit, as is evident in this instance this Board did not permit, its judgment as to what is beneficial or what is detrimental to the high school student, whose welfare and education have been entrusted to it by law, to be affected by the unrestrained enthusiasm of the adult population for athletic contests, events and those who excel in such sports, the `cheers' and sometimes the `boos' emanating from the high school stadium and gymnasium or the revenue derived from the turnstiles."
In dealing with the same issue, the Supreme Court of Utah, in Starkey v. *449 Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718, enunciated the following test of validity:
"The extent to which other supplementary recreational and educational extracurricular activities of the character referred to are made available is the responsibility of the School Board. The manner in which this is carried out of necessity rests in their discretion. Their authority extends to making reasonable rules and regulations calculated to serve the purpose of education. This, of course, includes the prescribing of qualifications for students to participate. When they have adopted standards it is to be assumed that they have acted properly and one attacking their action has the burden of persuasion to the contrary.
"It is not for the courts to be concerned with the wisdom or propriety of the resolution as to its social desirability, nor whether it best serves the objectives of education, nor with the convenience or inconvenience of its application to the plaintiff in his particular circumstances. So long as the resolution is deemed by the Board of Education to serve the purpose of best promoting the objectives of the school and the standards for eligibility are based upon uniformly applied classifications which bear some reasonable relationship to the objectives, it cannot be said to be capricious, arbitrary or unjustly discriminatory.
"The reasons given by the Board in justification of its resolution are certainly not entirely without merit. It is asserted that one of its main concerns is the problem of `drop out' of large numbers of high school students before completing that phase of their education; that the increased number of teen-age marriages between high school students is considered to be one of the contributing factors to this problem; and that such marriages should be discouraged; and further that when they do occur it is desirable that the parties devote more time and attention to the serious responsibilities involved rather than spending the extra time needed for extracurricular school activities.
"We have no disagreement with the proposition advocated that all students attending school should be accorded equal privileges and advantages. But the participation in extracurricular activities must necessarily be subject to regulations as to eligibility. Engaging in them is a privilege which may be claimed only in accordance with the standards set up for participation. It is conceded as plaintiff insists, that he has a constitutional right both to attend school and to get married. But he has no `right' to compel the Board of Education to exercise its discretion to his personal advantage so he can participate in the named activities."
We are in accord with the views voiced in both Stevenson and Starkey, above.
In the somewhat analogous case of Marino v. Waters, above, we held that a voluntary association of High Schools could legally adopt reasonable regulations governing participation in high school athletics. The rule involved in the cited authority was one prohibiting transfer students from engaging in athletic contests. We held in Marino, above, that such rules are within the sound discretion of a voluntary association and will not be interfered with by the courts except and unless found to constitute a breach of discretion producing an arbitrary, unsound and unreasonable result. Concededly the regulatory authority of voluntary associations is judged by standards somewhat different than those applicable to the state or its agencies. However, as respects the constitutional requirement of fairness and uniformity, there is no substantial difference in either instance.
*450 The fact that the governing authority of an adjoining school district has a different policy is a matter of no moment. The underlying purpose of the resolution before us is a matter upon which individuals might differ in all reasonableness, sincerity and candor. Exercising its discretion, defendant board has elected a policy which in its judgment promotes the best interest of both the school system and the individual students entrusted to defendant's supervision.
We find here that the basis of defendant's action is neither unreasonable, arbitrary nor capricious. On the contrary, the rule assailed bears reasonable relationship to the lawful end of promoting legislative objectives committed to defendant's charge. The classifications resulting from the policy in question rest on sound and reasonable bases. The criteria involved has been given uniform, impartial application in each and every case. The regulation is reasonably calculated to achieve the legitimate objective of affording an education to all, including appellant who complains of the regulation.
That appellant may suffer a potential financial loss in the possible deprivation of a college scholarship is a matter of secondary concern. The extent to which extra-curricular activities may be participated in by students is the responsibility of defendant board. The Board's supervision of such activities will not be interfered with so long as its policies in this respect are fair, uniform and based upon sound discretion. A student's right to possible emoluments resulting from extracurricular activities is not absolute and unconditional. If it is restricted by sound, reasonable policy the student may not complain so long as all in the same classification are accorded uniform treatment.
The judgment of the trial court is affirmed at appellant's cost.
Affirmed.