414 So.2d 862 (1982)
Lynn B. DEAN
v.
Honorable William J. GUSTE, Jr., Attorney General, of the State of Louisiana, Honorable John F. Rowley, District Attorney for the Parish of St. Bernard and the St. Bernard Parish School Board.
No. 12933.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 1982.
Writ Denied July 2, 1982.
*863 John F. Rowley, Dist. Atty., Nunzio S. Cusimano, Jr., Asst. Dist. Atty., Chalmette, for defendants-appellees.
Roy A. Raspanti, New Orleans, for plaintiff-appellant.
Before BARRY, AUGUSTINE and WILLIAMS, JJ.
AUGUSTINE, Judge.
The primary question which we are called upon to decide in this case is whether the rule of the St. Bernard Parish School Board prohibiting the sound recording of executive sessions by any member of the board violates the First Amendment to the United States Constitution.
Petitioner, Lynn B. Dean, is a member of the St. Bernard Parish School Board.
In February, 1981, the School Board, by a vote of 10 to 1, enacted a rule prohibiting the tape recordation of the proceedings of an executive session by any members of the board. Mr. Dean's was the only dissenting vote cast.
On March 11, 1981, when Mr. Dean attempted to tape record the proceedings of an executive session of the School Board, he was advised by the board that his actions were in violation of the rule of February, 1981.
Petitioner thereafter instituted the present action for declaratory judgment, alleging that the statutory law regarding executive sessions of a public body (La.R.S. 4:1-12) gives no clear answer with respect to the question raised, i.e., whether petitioner may tape record the proceedings of an executive session of the school board.
In argument before the trial court, it was Mr. Dean's contention that the law affords him the right to record executive sessions of the School Board in that:
1) the public is entitled to know the content of discussions at executive sessions of a school board when a question arises as to the propriety of that session;
2) a board member may publish his sentiments on any subject limited only by his responsibility for abuse of that freedom;
3) a board member has the right to publish the contents of the discussion of an executive session when he has reason to question the propriety of the proceedings and, as a consequence, he has the right to record these proceedings in any manner he sees fit;
4) it is not unlawful for a person who is a party to a conversation to tape that conversation.
In response to these arguments, the defendant contends that Louisiana statutory law confers upon the School Board the right to adopt reasonable rules and regulations for the conduct of its business. In this regard, La.R.S. 17:81 provides:
"Each school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the State Board of Elementary and Secondary Education, as it may deem proper."
La.R.S. 17:6(10) allows the school boards of this State to adopt, amend or repeal rules, regulations and policies necessary or proper for the conduct of the business of the board.
Without addressing the constitutional issues raised by petitioner, the trial court found that the School Board's rule was not arbitrary or unreasonable in light of Louisiana's so-called Sunshine Law. Accordingly, it upheld the regulation under the authority of Estay v. Lafourche Parish School Board, 230 So.2d 443 (La.App. 1st Cir. 1969), which requires the courts of this State to uphold the rules and regulations adopted by school boards unless they are found to be arbitrary and unreasonable.
Petitioner now brings this appeal, urging the same grounds as before, but with apparent emphasis on the constitutionality of the School Board's regulation. We think that *864 the constitutional issues raised by the facts of this case warrant our consideration.
Petitioner seeks to invalidate the regulation as a prior restraint of speech, citing Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The importance of that category to Mr. Dean's position is that "any system of prior restraints comes to this Court bearing a heavy presumption against its constitutional validity." Bantam Books, Inc., v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1968); New York Times v. United States, (Pentagon Papers Case), 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971); Nebraska Press Association v. Stuart, 427 U.S. 539, 556-59, 96 S.Ct. 2791, 2801-02, 49 L.Ed.2d 683 (1976).
Such a regulation as concerns us here was attacked as a prior restraint in CBS, Inc., v. Lieberman, 439 F.Supp. 862 (E.D.Ill.1976). There CBS faced an unwritten policy of the Illinois Commerce Commission which prohibited the filming, photographing and tape recording of open meetings held by the commission. It was found that inasmuch as CBS had not been prevented from disseminating news or comment upon the proceedings before the commission, the regulation did not operate as a prior restraint upon publication by CBS.
We find that reasoning to be applicable here. Neither the School Board nor any other authority has sought to prevent publication of any message by Mr. Dean. He remains free to publish whatever he chooses concerning any matter entertained by the School Board, limited only by his own discretion and the laws of this State governing defamation. Accordingly, we hold that the questioned regulation does not operate as a prior restraint.
Alternatively, petitioner urges that the School Board's regulation is an unconstitutional abridgement of the right to gather information, protected by the First Amendment. His premises for this conclusion are that the details of the School Board's executive sessions are matters of public interest of which the public may assert a right to know and that, as a representative of the public and member of the School Board, it is his duty to convey these matters to the public as completely and accurately as possible; that the duty to convey information regarding these matters necessarily implies the right to gather the information by the most accurate means at his disposal, i.e., his tape recorder.
The premises of petitioner's argument appeal to legitimate First Amendment concerns. Our form of democracy presupposes an informed vote, the product of a free flow of information and ideas. We recognize the primacy of the First Amendment among constitutional values and consider that it must derive from the special mission of the press and a freely speaking public to hold government accountable to the people. We do not argue with the petitioner's contention that the right of access to information and the right to gather information have some constitutional dimension.
These rights were first recognized in Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965), where it was said that "The right to speak and publish does not carry with it the unrestrained right to gather information"thus implying the existence of some right, however limited. Later, the Court in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) remarked that "news gathering is not without its First Amendment protections". But whatever vague dimension these cases give to the right to gather information must be considered in light of this: the common-law has never recognized the right of the public to attend meetings of governmental bodies. Cross, The Peoples' Right to Know, 180-182; Open Meeting Statutes: The Press Fights for the Right to Know, 75 Harv.L. Rev. 1199 (1962). The right is not expressly conferred by the terms of the Constitution itself, nor can there be found a single case which notices an implied constitutional right to attend, for example, sessions of a state legislature or of the United States Congress. Prior to the enactment by the various states of so-called Sunshine Laws, to the extent that public attendance at such meetings existed, it had been a function not of right, but of custom.
*865 Indeed, only recently it announced for the first time that the First Amendment establishes the right of the public to attend a criminal trial. Richmond Newspapers Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). But the exceptional nature of this right is derived from the tradition of the English common law which has emphasized the public character of a criminal trial since the days before the Norman Conquest.
The same cannot be said of other asserted rights of public access to information. In Gannett Co., Inc. v. De Pasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), where it was held that the press and public are afforded no right deriving from the Constitution to attend pre-trial hearings in a criminal case, Justice Rehnquist stated in a concurring opinion that "this Court emphatically has rejected the proposition ... that the First Amendment is some sort of constitutional sunshine law", and that "there is no First Amendment right of access in the public or the press to judicial or other governmental proceedings", citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 609, 98 S.Ct. 1306, 1317, 55 L.Ed.2d 570 (1978); Saxbe v. Washington Post Co., 417 U.S. 843, 850, 94 S.Ct. 2811, 2815, 41 L.Ed.2d 514 (1974); Pell v. Procunier, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974); Branzburg v. Hayes, 408 U.S. 665, 684-685, 92 S.Ct. 2646, 2658-2659, 33 L.Ed.2d 626 (1972); Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 1280-1281, 14 L.Ed.2d 179 (1965) and Houchins v. KQED, Inc., 438 U.S. 1, 9-15, 98 S.Ct. 2588, 2594-2597, 51 L.Ed.2d 553 (1978).
In Houchins, supra, the issue was whether the news media have a constitutional right of access to a county jail, over and above that of other persons, to interview inmates and make sound recordings and films, etc., for publication. It was held that such a right does not exist. Justice Stewart stated in a concurring opinion that "The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government... The Constitution does no more than assure the public and the press equal access once government has opened its doors". At 98 S.Ct. 2597. And the question whether government must open its doors at all is a nonjusticiable issue, best answered by resort to the legislative process where the coercive effect of public opinion can be brought to bear against those bodies which decide truly public issues behind closed doors. Id., at 2596.
The point of this discussion is that the States are altogether without constitutional impediment should they decide to close the doors of their legislative chambers and other governmental bodies.
It follows that if the States are free to prohibit public attendance at meetings of governmental bodies, they are free to prohibit the tape recording of those proceedings by those who are enabled to attend not by virtue of the Constitution, but by statute.
We see no reason to afford petitioner, as a member of the School Board, any special rights under the First Amendment over and above those which reside in the general public. To the extent that we have considered petitioner's claimed right in terms of public access, we have done so because of his assertion that he seeks to act as a representative of the public in their right to know. The question of government's duty to convey information to the public is but the other side of the coin, and finding there no constitutionally imposed duty, we must recognize the right of the School Board to employ reasonable means to restrict the flow of information between itself and the public. We therefore hold that the School Board's regulation which prohibits the tape recordation of its executive sessions does not offend the First Amendment.
We reach this conclusion with due regard for the democratic principles which require government's openness and responsibility to an informed electorate. In the aftermath of Richmond Newspapers, supra, the Supreme Court of the United States may yet discover in the First Amendment a right of the public to attend meetings of governmental bodies, if not on the basis of tradition, *866 then perhaps for the reason that government's accountability to the people depends so much upon the visibility of the decision-making process. See The Public Right to KnowThe First Amendment as a Sword, 1980, Supreme Court Review, 1-25. But even if we ourselves were inclined to acknowledge that right, we would not choose the present case to announce it. Here, petitioner seeks to record not the public meetings of the School Board, but its executive sessions.
Louisiana's Constitution, while creating the presumption that meetings of public bodies are open to the public, nevertheless allows the legislature to exempt from public deliberation specific topics whose matter requires the more private treatment afforded by executive sessions.[1] La.R.S. 42:6 expressly limits discussion or deliberation in executive sessions to those matters defined in La.R.S. 42:61. Among these are discussions of the character, professional competence, or physical or mental health of a person; strategy sessions or negotiations with respect to collective bargaining; litigation, when an open meeting would have a detrimental effect on the bargaining or litigating position of the public body and investigative proceedings regarding allegations of misconduct. Also specifically exempted are discussions between a city or parish school board and individual students, or their parents, regarding the problems of such students.
Considering the nature of these topics, we are of the opinion that the balance of First Amendment rights against the legitimate needs of governmental privacy as to those enumerated matters must weight in favor of the latter. Governmental efficiency and by that we mean not merely the volume of work product, but fruitful, fair and accurate decision-makingis enhanced by the uninhibited and vigorous flow of debate. Certain matters, such as those exempted and designated for closed hearing, do not lend themselves to such treatment by public officials unless the public is excluded. In the end, there must be an acknowledgment that the public's right to know is not absolute. Even Branzburg, which we cited earlier as one of the first cases to recognize the constitutional nature of the right to gather information, accepted as unquestionable the exclusion of the press from grand jury proceedings, judicial conferences, and the meetings of other official bodies gathered in executive session. 92 S.Ct. 2646, at 2658.
Having found that the United States Constitution affords petitioner no right to record executive sessions of the School Board, we now turn to Louisiana law.
As to the recording of the proceedings of public bodies, La.R.S. 42:8 provides that "All or any part of the proceedings in a public meeting may be recorded by any person in attendance by means of a tape recorder or any other means of reproduction." (Emphasis ours)
There is no similar provision relating to the recordation of executive sessions. We interpret the legislature's silence on this matter to mean that each public body should have the prerogative to allow or prohibit the use of tape recorders at closed meetings.
In light of that interpretation, we hold that the School Board's prohibition is neither arbitrary nor unreasonable, and therefore must be upheld. Estay v. Lafourche Parish School Board, 230 So.2d 443 (La.App. 1st Cir. 1969).
Finally, throughout the course of our deliberations on this subject, we have borne in mind that Mr. Dean's announced purpose is to employ tape recordings to verify misconduct on the part of the School Board in the event it should arise. But this anticipation of wrongdoing reveals an antagonism which we cannot share. We will not presume that the School Board will violate its public trust and the law of this state by closing its doors to discuss matters which by law are afforded public deliberation. To the contrary, it is to be presumed that public officials will *867 perform their duties in good faith and in a manner loyal to the public interest.
In the event that violations do occur, Mr. Dean and the people of St. Bernard Parish will have the legal means to rectify it. La.R.S. 42:9 provides for the voidability of any action taken by the School Board in violation of the Sunshine Law provisions (La.R.S. 42:4.1 et seq.). La.R.S. 42:11 further allows enforcement of the law by writ of mandamus, injunctive relief and declaratory judgment, and any noncompliance with the orders of the court in these matters is, of course, punishable as contempt.
In any event, petitioner is free to discuss with anyone the matters brought into executive session, the only bounds being his own sense of propriety. Under these circumstances, we find no reason to regard the School Board's regulation as arbitrary or unreasonable.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] "No person shall be denied the right to observe the deliberations of public bodies ... except in cases established by law." La.Const. art. XII, § 3.