Dear Mr. Rozas:
You have requested an opinion from this office concerning the following issue:
 May school district A withhold the records of a student transferring from school district A to school district B because a debt is owed to school district A by said student.
You specifically asked whether student records could be withheld due to nonpayment of debts such as for lost books, library book late fees, and other debts owed to the transferring district. Additionally, you requested that we presuppose that the two school districts have agreed to the transfer per La. R.S. 17:105. It should be noted, it is the policy of most school districts in Louisiana to refuse admission to a transferring student who does not provide his or her records to the receiving school.
1. School districts have the authority to enact rules andregulations.
The Louisiana Legislature conferred upon local school districts the authority to enact rules and regulations for its own government. The rules and regulations cannot conflict with State law or regulations of the State Board of Elementary and Secondary Education. La. R.S. 17:81.
Full and final authority was awarded to the local boards in La. R.S. 17:104, which in pertinent part states:
 . . . each local board shall have full and final authority and responsibility for the assignment, transfer and continuance of all pupils among and within the public schools within its jurisdiction, and shall prescribe rules and regulations pertaining to those functions.
However, this regulatory power is not without limits.[1] It is the school board's "clear and unmistakable obligation to conduct the schools under its supervision in the overall best interest of each pupil, each school, and the system as a complete unit." Estay v.Lafourche Parish School Board, 230 So.2d 443
(La.App. 1st Cir. 1969).
In Estay, the First Circuit held that local school boards have the power and authority to make their own rules and regulations as long as these rules and regulations are neither arbitrary nor unreasonable. In this case, the Lafourche Parish School Board instituted a rule which prevented participation in high school athletics by any student who had entered into marriage while in high school. The plaintiff was a senior who had been married the summer before his senior year and who had been a starting player on the South Lafourche High School football team. The school board stated that the rule was intended to discourage high school students from marrying before completing their high school education.
In ruling for the Lafourche Parish School Board, the court held that the school board's regulation in this instance was neither arbitrary nor unreasonable. In addition, the court stated that the rule was in line with what the court stated was the school board's primary objective, which is to tarnish "each student and pupil a full and complete high school education, . . ."Estay, 230 So.2d at 446 (La.App. 1st Cir. 1969). The court further stated that, although application of the regulation may result in less extracurricular activity in some instances, the rule bore a reasonable relationship to the main objective of encouraging high school students to complete their education.
2. Local School Districts do not have the authority to enactrules and regulation which prevent a student's education.
Now, it must be determined if local school districts may enact a rule or regulation which allows schools to withhold records of transferring students who owe a debt to that school. State law strongly encourages Louisiana children to complete high school education. The legislature has enacted many statutes with the underlying objective of keeping students in school. Every parent, tutor or other person residing in Louisiana must send their child to a public or private day school from the child's seventh to seventeenth birthday. La. R.S. 17:221. This statute also requires that the parent or other responsible person assure the attendance of the child during regular school hours. Children of Louisiana must attend school at least one hundred eighty (180) days. La. R.S. 17:225.
In addition to the compulsory attendance laws, the Louisiana Legislature created the position of attendance officer. La. R.S.17:230. These persons are charged with various responsibilities, such as maintaining student attendance records, investigating unexcused absences, nonenrollment, giving written notice to those parents whose children are habitually absent, and visiting the homes of habitually absent children. The statute also grants the power to attendance officers to undertake "other duties required by law or school board policy to reduce or respond to truancy." La. R.S. 17:230.
The attendance of all school pupils is checked each school day and at the beginning of every class period. La. R.S. 17:232. This statute also prohibits any public elementary or secondary school pupil from absenting himself from school attendance during the school day upon his or her own authority. Cases of habitual absence shall be reported to the family or juvenile court of the parish or city in which the child resides.
Each city and parish school board shall establish a policy to provide for placement in school and the education of children who have no permanent address or who have been abandoned by their parents. La. R.S. 17:238. This statute also provides that no school may deny enrollment of a child strictly on this basis. However, there is no requirement for the enrollment of a child who is not allowed to attend another school system as a result of disciplinary actions.
In 1993, the Louisiana Legislature passed a law which denies a driver's license or instruction permit to any person seventeen years of age or younger who does not have either a high school diploma or Graduation Education Development Certificate, or who cannot prove that he or she is enrolled in school in this or another state or is in a state approved home study program. La. R.S. 32:431.
As evidenced by the above statutes and the Estay case, the primary objective of the Louisiana school system is to provide a complete education for every child of school age. Although the school districts are granted wide discretion to make rules and regulations, these rules should not be in conflict with the primary objective of educating Louisiana children.
When a student's records are withheld in order to force debt payment, the student is not allowed to enroll in the school to which he or she is attempting to transfer. In effect, the school systems are preventing the student from completing his or her high school education. The result is that the regulation allowing student records to be withheld contradicts the very objective which the school districts have been mandated to achieve.
3. Parental Responsibility
By withholding the student's records, the student is punished for their parents' failure to pay a debt. School records are often withheld when a student is attempting to transfer because of unpaid debts such as tuition, fees and penalties. These unpaid debts are directly attributable to the parents' failure to pay in a timely manner. Yet, the schools are withholding the student's records which results in a loss of education to the student. Thus, the student is punished for the parents' wrongdoing.
When a student has lost or destroyed school property, Louisiana law states that the student may not be held responsible. Article2318 of the Louisiana Civil Code states:
 The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
 The same responsibility attaches to the tutors of minors.
This article puts the responsibility of a minor's actions on the parents. If a minor negligently loses his or her texts or damages school property, the parents are responsible for paying the debt, not the child. School districts cannot punish the child, i.e. by not transferring records, for the omission of the parents.
4. Conclusion
Thus, the holding of a student's school records in order to force debt repayment is an action which contradicts the primary objective of the Louisiana school system and results in punishment of the child when the debt is either the result of the parents' nonpayment or the result of some action by the child. In order to continue to foster the goal of providing children with a complete education and to follow the law as stated in Louisiana Civil Code Article 2318, the school district's recourse should be against the parents and not the child. Therefore, it is the opinion of this office that a school district may not hold the records of an elementary or secondary school student in order to force payment of a debt. To the extent previous Attorney General Opinions are in conflict with the above decision, they are hereby reversed. See Attorney General Opinions 92-449 and 80-302.
If you have any further questions regarding this matter, please do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
BY: ________________________________
 SHERRY L. TEW Assistant Attorney General
RPI/SLT:tfd
DATE RECEIVED:
DATE RELEASED:
SHERRY L. TEW, ASSISTANT ATTORNEY GENERAL
[1] La. R.S. 17:104 states in pertinent part: [t]he following factors and the effect or results thereof shall be considered; with respect to the individual pupil, as well as other relevant matters: Available room and teaching capacity in the various schools; the availability of transportation facilities; the effect of the admission of new pupils upon established or proposed academic programs; the suitability of established curricular for particular pupils; the adequacy of the pupil's academic preparation for admission to a particular school and curriculum; the scholastic aptitude and relative intelligence or mental energy or ability of the pupil; the psychological qualification of the pupil for the type of teaching and associations involved; the effect of admission of the pupil upon the academic progress of other students in a particular school or facility thereof; the effect of admission upon prevailing academic standards at a particular school; the psychological effect upon the pupil of attendance at a particular school; the possibility of breaches of the peace or ill will or economic retaliation within the community; the home environment of the pupil; the maintenance or severance of established social and psychological relationships with other pupils and with teachers; the choice and interests of the pupil; the morals, conduct, health and personal standards of the pupil; the request or consent of parents or guardians and the reasons assigned therefor.